BAUER, APPELLEE, *v.* ADMINISTRATOR, BUREAU OF EMPLOYMENT SERVICES, ET AL., APPELLANTS.

(No. C-850802—Decided September 24, 1986.)

*Ebner & Riker* and *J. Timothy Riker,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Richard H. Lippert* and *Mark Evans,* for appellant Administrator.

BLACK, J. The sole issue on this appeal is whether an individual qualifies for unemployment benefits under R.C. 4141.01(R), requiring that he must have "been employed" and "earned remuneration" during at least twenty weeks of his "base period" (defined in R.C. 4141.01[Q]; roughly, the year before he applies for benefits), if he has performed services for an employer during twenty weeks of the base period but has been paid for less than the requisite twenty weeks. We hold that an individual has not "earned remuneration" during the requisite twenty weeks, and thus does not qualify for benefits under the statute, when the evidence fails to show that he had an agreement with an employer to be compensated for each of those weeks.

From July 11, 1983 to May 10, 1984, appellee, Charles W. Bauer, served as president of Chas B's, Inc., a corporation formed for the management of a restaurant known as Chas B's Buffet. William T. McClain, James M. Huegel and Bauer were equal shareholders in the corporation as well as officers and directors.

According to Bauer's testimony, the three agreed that Bauer would be hired as overseer of the construction of the restaurant and as manager of restaurant operations. Bauer stated that his employment began on July 15, 1983, and his wages were set at $550 per week. Construction began on July 15, but Bauer said he deferred receipt of the agreed wages during the construction period and lived on his savings, so that the corporation would have sufficient funds to cover the remodeling. The only payments he received prior to the opening of the restaurant on February 5, 1984, were two checks he wrote to himself during the month of July: the first, dated July 6, 1983, was in the amount of $1,000 and was designated "Pay advance"; the second, dated July 30, was for $700 and was recorded with the notation "Payroll." At a rate of $550 per week, these payments might be wages for 3.09 weeks. The record also contains eleven weekly pay stubs in the gross amount of $550 each, issued to Bauer from February 12, 1984 to April 22, 1984, after the restaurant opened. The total payments to Bauer, therefore, covered 14.09 weeks, because the record contains no evidence of any other payments to him. He testified that he was engaged in hiring restaurant staff in September and October 1983 and in other operations prepara-tory to the opening, such as ordering equipment and supplies; this was corroborated at least in part by two former restaurant employees, one of whom testified that Bauer was "present on the premises" during the time (a total of one hundred five hours) between her hiring and the opening of the restaurant, and that he telephoned her at home from the restaurant to discuss business. We find a letter from Huegel, dated April 7, 1984, summoning Bauer to a board meeting on April 30 and an undated and unsigned document, apparently a page from the minutes of a board meeting, containing a resolution to remove Bauer as manager of the restaurant. We find no documentary or testimonial evidence corroborating his own statements and specifically dealing with the remuneration, terms or duration of the employment arrangements between him and the corporation or the other directors/shareholders. The restaurant appears to have ceased operations.

On May 11, 1984, Bauer submitted an application for determination of his right to unemployment benefits to appellant Ohio Bureau of Employment Services ("OBES"). On July 13, 1984, Bauer's claim was disallowed on the grounds that he did not have twenty credit weeks[1] of employment during his base period.[2] Bauer applied to the administrator for reconsideration, and

---

[1] The definition of "credit week" is set forth in R.C. 4141.01(O)(1) as follows:

" 'Credit week' means any calendar week in an individual's base period with respect to which he is paid, in employment subject to Chapter 4141. of the Revised Code, remuneration of not less than twenty dollars; except for any base period weeks within the period beginning December 26, 1982, and ending December 31, 1986, a 'credit week' means any calendar week with respect to which an individual is paid, in employment subject to Chapter 4141. of the Revised Code, remuneration of not less than thirty-seven times the minimum hourly wage provided in section 4111.02 of the Revised Code. Only one credit week can be established for any one calendar week in an individual's base period."

[2] R.C. 4141.01(Q) provides in pertinent part:

" 'Base period' means the first fifty-two consecutive calendar weeks of the fifty-four calendar weeks immediately preceding the first day of an individual's benefit year * * *. If an individual does not have sufficient credit weeks in the base period to

the initial determination disallowing the application was affirmed. Bauer appealed from the administrator's decision, and a hearing was held before a referee on August 14, 1984, at which Bauer and the two former coworkers gave testimony. No other shareholders or officers of Chas B's were present at the hearing. The referee found that "[t]he evidence fails to establish that this claimant was an employee in order to establish credit weeks, with the exception of the period from February through April, 1984. He does not have the sufficient credit weeks of covered employment in order to establish a valid application." Accordingly, the referee affirmed the administrator's decision, and the board of review denied further administrative appeal.

Bauer appealed to the court of common pleas under R.C. 4141.28(O), and the court reversed the board's decision without giving any reason other than that "the decision was unlawful, unreasonable, and contrary to the manifest weight of the evidence."[3] We have reviewed the law and the evidence, and we cannot agree with the lower court's assessment of the board's decision.

The administrative disqualification of the appellee was based on the re-quirements of R.C. 4141.01(R), which provides in pertinent part:

"* * * Any application for determination of benefit rights made in accordance with section 4141.28 of the Revised Code is valid if the individual filing such application is unemployed, has been employed by an employer or employers subject to sections 4141.01 to 4141.46 of the Revised Code, in at least twenty calendar weeks within his base period, and *has earned remuneration* of at least twenty dollars during each of such twenty weeks, except that if any of the twenty calendar weeks fall between the period beginning December 26, 1982, and ending December 31, 1986, the remuneration the individual is required to earn for each of the weeks falling within that period shall be not less than thirty-seven times the minimum hourly wage provided in section 4111.02 of the Revised Code."[4] (Emphasis added.)

Bauer asserts that, in order to qualify under this provision, he need not have "received" remuneration during twenty weeks as long as he performed services and thus "earned" remuneration during that period. He argues that the term "earn," as used in the statute, denotes "deserve" or "be entitled to" and that in this sense

---

qualify for benefit rights, his base period may be the fifty-two consecutive calendar weeks immediately preceding the first day of his benefit year."

[3] In her single assignment of error, the administrator attacks the trial court's "holding that the claimant had worked in a sufficient number of credit weeks to qualify for unemployment benefits." That court held only that the board's decision was "unlawful, unreasonable, and contrary to the manifest weight of the evidence," and presumably based this holding on a disagreement with the referee's finding of insufficient credit weeks. We interpret the assignment of error as a challenge to the presumed holding by the court of a suffi-cient number of credit weeks. We find merit in appellant's challenge, and we sustain the assignment of error.

[4] The parties argued this appeal as if appellee were required to earn at least $20 per week during each of his twenty credit weeks. Although the question of the minimum amount appellee was required to earn per week is not at issue here, we note that since the period of appellee's claimed employment fell between December 26, 1982 and December 31, 1986, he was required to earn at least thirty-seven times the statutory minimum hourly wage of $2.30, R.C. 4111.02, or $85.10 per week for twenty weeks in order to qualify under R.C. 4141.01(O) and (R).

he "earned remuneration" from Chas B's during the entire time of his employment from July 15, 1983 to April 30, 1984, a period of more than twenty weeks, because he performed services for which he was entitled to be paid. Thus, he maintains that he is not disqualified under R.C. 4141.01(R) from claiming unemployment benefits.

We decline to interpret the statute so broadly as to allow a claim for benefits under these circumstances. In order to satisfy the statutory requirement of having "earned remuneration" in a certain amount for each of twenty weeks, a claimant must have served an employer during that time under an agreement with the employer to provide services and to be compensated in at least the requisite amount (over the full twenty-week period). We believe that the referee and the board made no error in holding that appellee did not establish these essential facts and therefore did not meet his burden of proving eligibility. See *Shannon v. Bur. of Unemp. Comp.* (1951), 155 Ohio St. 53, 44 O.O. 75, 97 N.E. 2d 425, paragraph one of the syllabus. The record corroborates appellee's testimony that he "earned" a salary of $550 per week only for the eleven weeks for which he produced pay stubs and the 3.09 weeks for which he wrote lump-sum checks. Actual payment may be deemed to infer an agreement to compensate for the services paid for.

The suggestion that an application for unemployment benefits should be allowed in the absence of proof of an agreement to be compensated raises the specter of a host of unwarranted claims in situations not amounting to bona fide employment. It also introduces the possibility of a claim by an individual who was paid less than the statutory amount during each of twenty weeks being denied while a claim by an individual who received nothing but "deserved" the requisite amount is allowed. Statutory construction must avoid such absurd or untoward results. *Kendrick v. Masheter* (1964), 176 Ohio St. 232, 234, 27 O.O. 2d 128, 129, 199 N.E. 2d 13, 15.

Appellee points out that the Unemployment Compensation Act is to be liberally construed, R.C. 4141.46, but this mandate of liberal construction is not to be extended so as to amend the provision under scrutiny in order to encompass an unanticipated set of facts. *Adamski v. State, Bur. of Unemp. Comp.* (1959), 108 Ohio App. 198, 204-205, 9 O.O. 2d 220, 223, 161 N.E. 2d 907, 913. By urging that the range of qualified applicants for unemployment benefits must include not only former wage earners but also former workers presenting undocumented assertions of entitlement to wages, appellee asks the court to extend the reach of unemployment benefits. See *State, ex rel. Cox, v. Lopeman* (1984), 13 Ohio App. 3d 192, 13 OBR 239, 468 N.E. 2d 781, paragraph one of the syllabus. Such an expansion of the scope of the statute would exceed the judicial function. We believe that by its terms and in conformity with the overall legislative scheme, R.C. 4141.01(R) requires that a presently unemployed individual must earn remuneration during at least twenty credit weeks pursuant to an employment agreement. Appellee did not establish as a matter of law that he was the promisee of any commitment by his employer to pay him wages beyond those actually paid. Consequently, we find no basis for the court's conclusion that the board's decision to deny appellee's claim was unlawful.

In view of the scant evidentiary record, it was not a miscarriage of justice for the referee and the board, as the arbiters of all factual matters, see *Adamski, supra,* at 211, 9 O.O. 2d at 227, 161 N.E. 2d at 917, to find that appellee had failed to establish suffi-

cient credit weeks of employment to qualify for benefits. Therefore, the common pleas court erred not only in concluding that the board's decision was unlawful but also in its determination that the board's decision was unreasonable and against the manifest weight of the evidence. See *Jesse* v. *Steinbacher* (July 9, 1986), Hamilton App. No. C-850660, unreported.

We reverse the judgment of the court of common pleas and reinstate the decision of the Board of Review of the Ohio Bureau of Employment Services disallowing appellee's application for unemployment benefits.

*Judgment reversed.*

DOAN, P.J., and KLUSMEIER, J., concur.